Duncan, J.
delivered the opinion of the Chief Justice and himself.
There are no disputes between neighbours so apt to excite fierce animosities, or which are so lasting, as the injuries of the nature of which the plaintiff complained. They do not consist in one act, but are living injuries, which one action will not terminate. Of all controversies, this is one in which adjustment by referees— judges chosen by the parties — is most proper, and best adapted to put an end to the strife, and most effectual in fixing for ever the rights of the parties. Their examination could be more accurate than that of any jury on a view. The dispute had continued for seventeen years, and was all that time in law; and when it would end, or how many suits it would cause, no man could foresee. The sheriff and viewers were on the ground, when the plaintiff made a proposition, which was the foundation of the submission and award, and the verdict of the jury on the several issues here found. The submission was freely and fairly entered into, and the conduct of the referees freed from the imputation of undue influence practised, or fraud; and every court of justice would surely feel regret, if this bone of contention was again to be gnawed by these *77 parties, and that they were to be sent back to court, after breathing a while, and be set on again, to worry each other for the rest of their lives, and transmit a hereditary feud to their descendants. For there is no form of action, except the writ of quodpermittat prosternere .could end it. That is’ an unusual remedy. I never knew but one writ of that kind. For we have no Court of Chancery that could restrain by injunction, after the right had been decided, nor bill of peace, which, after several verdicts, could quiet the parties, except the effectual and wise bill of peace, settlement by judges of the parties’ own choice, who could go further than any court, by giving damages for the past injury, and regulating the future enjoyment of their respective rights.
But, however this might be the subject of regret, still, if this in point of law be. a vicious award, we are not to be influenced by these considerations, but are bound to declare it void. It is contended, that the referees exceeded their authority, and that the award is not pursuant to the submission. 1st, For that it carries the damages up to the date of the award. 2d, That it awards the costs of the suit, which gave rise to the agreement to refer. 3d, That it awards the costs of the reference.
The argument has been conducted with great ability on both sides. Every thing that ingenuity and authority could bring to bear on the question has been urged, and it has been done with a commendable brevity. Courts of justice, formerly examined awards with a^critical nicety, which one is ashamed of. Many of the nicest distinctions, which were so much the fashion of the day, and which were the fault of the day, in every other subject,as well as the law, are discarded; and these precedents are not to be admitted, in expounding awards at this day. We are not to be governed by the rules in Hutton, in Styles, and in Jllleyn, for there is a common sense rule, the plain and obvious meaning of the parties. Upon the ancient distinctions, it was justly said by Lord Hardwicks, in Lingood v. Eade, 2 Atk. 505, “courts of justice had scanned awards with so much nicety, as to make it impossible for arbitrators to do that which is the main intention of the submission, the putting an end to differences between the parties; but as justice between the parties is the material thing, if the award is good to -a common intent, and answer the intent of the parties submitting to a reference, this is sufficient;” and he further observes, “courts of law will not now make presumptions to overturn the award.” With these plain and rational rules to guide us, what was the main intention of the parties to the reference? The nature of the controversy, the time and occasion of the proposition, all show, it was not only intended as a final termination of all that was past, but a regulation for their future government, in the exercise of their respective water rights for-ever. By the agreement, “the referees were to mark, by some permanent niark, the height the water should be thereafter flowed, by the said Ellmaker's mill- *78 dam; and they were to assess the damages the said Buckley has sustained, by the back water of the said Ellmaker’s mill-dam;” the referees to meet on ten day’s notice. This agreement was made on the 23d of November, 1820, and the award on the 29th of December, 1820. Ten days time was to elapse before the meeting of the referees. It never could have been the intention of the parties, that a fragment of ten days should remain unsettled in a nuisance which had continued for seventeen years. The object was to quiet all controversies, and this is by no means inconsistent with the proposition, that the damages for the injury sustained should be left to three men, “for so long as the law would take the damages into consideration.” The obvious meaning of that is, that the referees should not go further back than six years, all else being barred by the statute of limitations. The reference was not a reference of the action then pending, to be confined to damages that would be given in that action, but & general reference, to end the whole controversy. I would construe the agreement, connected with the proposition, as submitting to the referees the assessment of damages, up to the date of the award. But, if this should be doubtful, which I think it is not, then the presumption would be, that no damages were sustained by the plaintiff, and none given between the time of the submission and the award. There might have been none sustained. The season was dry, the water so scant, that neither the mill of Ellmaker, nor the forge of Buckley, were in operation, or Buckley’s forge might have not been in operation from some other cause. For, though the words of the award might comprehend a time beyond the submission, yet it must be presumed, unless the contrary is shown, that nothing had arisen between the time of the submission and the award. Kyd on Awards, 237. But the inclination of my opinion is, that, if the referees had not assessed the damages up to its date, it would have contravened the intention of the parties, which was, to quiet the whole controversy.
As to the 2d and 3d objections, I will consider them together. All of the English authorities, as to the allowance of costs, are where the reference was in an action in court. It seems to have been pretty much a vexed question. It is reasonable, however, to conclude, unless there is something in the submission evidencing a different intention, of a controversy out of court, that it will be intended the parties were mutually to pay the expenses; and if it appeared in this case clearly, the referees had allowed the costs of the action, or the expense of the reference in the sum given in damages, the award would be erroneous. I say clearly; for, if it were ambiguous, the words ought to be construed in such manner, as to give effect to the award. 6 Mod. 33. Kyd on Awards, 233.
There can in reason be no difference whether the award is expressed to be made de et superprsemissis, or not. It will always be supposed that the referees so intended. But it cannot be doub.. *79 ed here but that it was so made, for the referees in the award recited the very matter of the submission verbatim.. Gwillim, in his note to 1 Bac. Ab. 214, where a ease in Cro. Jac. 640, is cited, of a submission of all controversies^; touching money laid out for one’s wil^e, when she was sole, afcqfeer request, and an award of three hundred and forty pounds, fot all sums laid out for the wife, while sole, omitting at her request, was held to be void, because, they award another thing than that which is contained in the submission, — adds this query, if the submission be recited in the award, whether the award shall not bear reference to the submission, and be construed accordingly; that is, to mean at her request, and be good.
But, taking into view the time, the occasion, the proposition, and the-agreement and award, it is a strained construction, to say that the referees either awarded the costs of the suit or the costs of the reference. To support this award, I would give to the term costs its legal signification, — legal costs to be recovered in a suit, and not the expenses of a reference. In Fox v. Smith, 2 Wils. 268, where this objection was made to an award, the. court said, we will intend that by costs, charges, and expenses, are meant such costs only as courts take notice of by their officers. Now, the costs of suit Buckley bad agreed to pay, when the right should be fixed, and the dam of Ellmaker regulated by the mark which would.be fixed by the referees. All that the referees intended to say, or have said, is this, “ We give to the plaintiff five hundred and seventy-three dollars and sixty-three cents damages, in full for the injury he has sustained by the back water of Ellmaker’s dam, and this is to be in full satisfaction of all damages and costs. The damages he has sustained are.five hundred and seventy-three dollars and sixty-three cents, but he is not to demand any costs from the defendant, because by agreeing to discontinue, he has agreed to pay his costs.” They have not taken the costs into view in the assessment of damages, because they assess the damages according to the agreement recited, which does not take in costs.
The clause, “which is to be in full of all damages and costs up to this date,” has reference not only to the agreement, but the proposition. It is a plain declaration that the damages assessed for the injury are to be in full satisfaction of every thing, not that they have taken into the consideration any thing but -the damages actually sustained. This is all matter of intention, and I think it can be collected with certainty, taking into consideration the whole subject matter. If authority were wanting to establish so clear a position, it is to be found; for in 1 Bac. Ab. 215, Roll. Ab. 243, pl. 10, there is this case, — if the submission be of all controversies to the time of submission, and the award, be that one of them should deliver up an obligation made since the submission, in sa~ tisfaction of all matters, this is good, because the bond only is given in satisfaction, not that the arbitrators have passed judgment *80 on a bond not in existence at the time of submission. Indeed, so strict was the construction at one time, that if the award did not express the sum awarded to be in satisfaction, this omission would vitiate tiie award. But, here, a discharge to the other must necessarily be presumed, from the payment of the sum, or performance of the act by the one. The expression — 11 which is in full of all damages and costs to this date,” is nothing more than would be implied from the assessment of the damages. If awards were not to be construed with liberality, if every presumption were to be made against them, as in former days, if they were to be examined with the keen eye of criticism, and if ingenuity could start a possible construction, from which it might be inferred that arbitrators exceeded their authority, and courts were so to infer, because it might be possible, we should make sad havoc of awards, and instead of arbitrations being the end of strife, they would be but the beginning of troubles. But they are not now so construed: they are interpreted according to the intention of the arbitrators, the arbitrium boni viri, not nicely and critically looked into in modern times, but to receive a benign construction. Fox v. Smith, 2 Wils. 268.
The opinion of a majority of the court is, that the award is a good award, pursuant to the submission, and that the judgment of the District Court should be reversed, and judgment entered for the plaintiff on the verdict.
Gibson, J.
As regards one of the points on which the cause has been argued, I am sorry to say, I am unable to arrive at the conelusion which is adopted by a majority of the court. It is unnecessary to review the decisions on the subject, for it will readily be conceded, that particular expressions are not to be caught at to destroy an award. Notwithstanding the nicety of distinction observable in the old cases, it is settled that submissions and awards, like any other species of writings, are to be expounded rationally, according to the actual intention of the parties. Questions like the present, therefore, are to be determined in favour of the award wherever it appears that the arbitrators have acted exclusively on matters' which it may fairly be presumed were intended to be submitted to their decision. In the ease before us, the arbitrators were authorized to assess the damages sustained by the plaintiff, and to ascertain the height to which the defendant might raise the water, without violating the rights of the plaintiff; and this was the extent of their power, for every other matter in dispute had been settled by the agreement of the parties themselves. The arbitrators awarded a gross sum to the plaintiff, “ in full for all damages and costs,” up to the date of the award; and the question is whether they have transcended their powers.
I am not for sustaining the exception to the assessment of damages, for the injury which was suffered between the time of the *81 submission, and that of the award. In the submission, the arbitrators are empowered to assess the damages which, as it is expressed, “ the said Bucleley has sustained;” and this, according to stricj&rammatieal constructionN.would relate to the date of the submit'lBn. But, to resort to ruSjfcjof gr$;,,|nar for the exposition of an agreement, every word of which is -afviolation of all grammar, would never lead to a satisfactory result. It is obvious that the parties knew too little of the structure of language to be able to express their meaning with precision. In common parlance, nothing is more frequent than the use of a past tense in relation to a future event, which is yet prior in time to something else which the speaker has in his view. Now, the first consideration of the parties, and indeed the very basis of the agreement, was the discontinuance of the nuisance; for all the other propositions are founded on it. They would therefore naturally look to it, as the proper period for estimating the compensation that ought to be made for the injury which should then have been sustained. I think,.then, the parties meant to say this: — The nuisance shall, first bo removed; and then arbitrators appointed for the purpose, shall determine what damages the plaintiff “ has57 sustained; that is, the damages which he then has sustained: the time when the principal thing about which they were treating was to take place, was that which was uppermost- in their thoughts: consequently, their expressions are to be understood in reference to it, and not to the time of the submission. -This construction is strengthened by considering that the plaintiff- had agreed to relinquish the advantage which he had gained by the early institution of an action, and to accept of damages .only for a period, within which his demand would not be barred by the statute of limitation; and whether that period should terminate at the date of the submission or of the award, could produce no substantial difference as to the consequences, the length of time to be compensated being in either case exactly the same.
But in awarding a gross sum in full of costs as well as damages, it seems to me the arbitrators intended to compensate a loss which.' the plaintiff had agreed to take on himself. It has not been pretended that any thing was submitted but the estimate of the damages which had been sustained directly from the nuisance; but it is said the arbitrators meant to prevent all future pretence of a» sepárate claim by the plaintiff for the costs of the suit which he was to discontinue; and that they intended to effect this without taking those costs into consideration as a part of the injury to be compensated. It is possible they may have done so; but to me it seems highly improbable. The natural and obvious import of the words “in full of damages and costs,57 is that the thing given is to be in satisfaction, not only of the damages, but- of the costs also: nor do I thifik this would be brought out more strongly by inserting the word compensation after the word full. A thing received in full *82 of a demand is received in compensation of the demand, even although the thing received be of less value. But we cannot conceive that the árbitrators intended to give less than a fair compensation for the whole of the injury which they were appointed to value; and therefore I am at a loss for any motive they could have, to say a word about the costs, unless they intended to include them in their estimate. Why introduce them into the award, if they thought they were not submitted ? And, if they had been submitted, it could have been only as the subject of compensation. If the arbitrators meant nothing more than to prevent an after dispute about them, they must have known they had nothing to do with that; as everything except the amount of the damages had been settled by the parties themselves; for the plaintiff, having agreed to discontinue his suit without any special provision for the payment of the costs of it, had agreed that they should be paid by him on whom the law should cast them: and, consequently, had agreed to pay them himself. Now, by acting at all on the subject of the costs, the arbitrators evidently meant to do something: but in awarding that they should be paid by the plaintiff, without allowing him their amount in the damages, they would in effect have done nothing; for that had already been provided for in the agreement; and we ought not to suppose they intended to do what was merely a nugatory act. But even in doing that, they would have travelled out of the submission; and, although that would not vititiate the award, yet, on the other hand, it is quite as probable they travelled out of it to compensate the plaintiff for his costs by increasing the damages. The argument rests upon an admission that the arbitrators have either way transcended their authority; but it is contended, that they have transcended it only in a way which does not render all void. But how is that to be inferred against the obvious import of their words? Whether they did or did not know that these costs were agreed to be paid by the plaintiff, they might very naturally consider them as a legitimate subject of compensation in damages, which they might think had been remotely incurred from the nuisance, and that they did so consider them I have little doubt. Believing, then, that they exercised a power not delegated to them, I am for affirming the judgment.
Afterwards, on' the 8th of June, on the motion of Ellmaker apd Hopkins, for the defendant in error, who wished to take a Writ of error, Jenkins, contra, the court made the following order:
Per Curiam.
In this case, the decision of the District Court, that the judgment should be arrested is reversed, and it is ordered that the record be remitted to the District Court, with orders to that court to enter judgment for the plaintiff.